## A91A1561. HOLDEN v. THE STATE.
(414 SE2d 910)

COOPER, Judge.

Defendant appeals his conviction by a jury of two counts of child molestation.

1. Defendant, Daniel Holden, enumerates the general grounds. The evidence adduced at trial, construed favorably to the prosecution, showed that Jean Holden, defendant's wife, operated a licensed in-home child care center which the two victims attended. Defendant was often at home during the time that the victims were at the center. In October 1988, on the way home from the center, Jessica Cundy ("Jessica"), then three years old, stated to her mother that "Daniel had hurt Jean's butt" and that "he hurts my butt all the time." When

Jessica and her mother got home, her mother asked Jessica what happened and Jessica pulled her pants down and put her hands between her legs indicating where Daniel had hurt her. Several days later, Jessica's mother took the child to the local Department of Family & Children's Services ("DFCS") where she was interviewed by a caseworker with DFCS. During the interview, Jessica indicated, by using anatomically correct dolls, that defendant had touched her on her breasts and genital area with his penis. During a subsequent videotaped interview conducted by the DFCS caseworker and a counselor, Jessica again used anatomically correct dolls to indicate that defendant had touched her in her genital area with his genitals. Jessica testified at trial that defendant had touched her in a bad way, that he put salt and peanut butter on her vaginal area and removed it with a napkin. The second victim, who was four years old at the time she reported the molestation, also testified at trial. While using anatomically correct dolls, the second victim stated at trial that defendant touched her on her genital area with his penis and his hands and put salt and pepper as well as peanut butter on her genital area. The State also presented medical evidence that the second victim had a torn hymen and that this was consistent with the insertion of a man's penis or finger into the vaginal opening. Both victims testified that the acts of molestation occurred while they were at the child care center. The evidence was sufficient for a rational trier of fact to find defendant guilty of two counts of child molestation under the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). *Hurst v. State*, 198 Ga. App. 380 (3) (401 SE2d 348) (1991).

2. Defendant contends that the trial court erred in denying his motion to suppress evidence seized from his home pursuant to two search warrants. The first warrant, No. 878, was issued on November 18, 1988, and authorized a search of defendant's residence for "any and all records, papers, writings, or receipts concerning the care or control of children." In support of that warrant, a detective gave an affidavit in which he stated that on November 9, 1988, he had received information from DFCS that several children had been molested by defendant, including one report of molestation of a child seven-and-one-half weeks old. The affiant further stated that his independent investigation revealed that defendant's wife had the day care center license and that at least one of the children had been molested while being cared for by defendant's wife. During the execution of warrant No. 878, in addition to records and documents relating to children cared for at the child care center, the officers seized two videotapes and two sexually explicit paperback books. Approximately three days after warrant No. 878 was executed, the second warrant, No. 881, was issued, authorizing a search of defendant's residence for

"any and all pornographic material, including but not limited to magazines, obscene devices." During the execution of warrant No. 881, over 200 items were seized, including sexually explicit magazines and books and various sexual aids and devices. A hearing was held on defendant's motion to suppress the items seized pursuant to both search warrants. As to warrant No. 878, the trial court entered an order granting defendant's motion as to the two videotapes seized but denying the motion as to the other items seized during the first search. No order was entered relating to warrant No. 881.

(a) Warrant No. 878. Defendant first argues that the affidavit given in support of the warrant did not give the magistrate probable cause to believe that the items sought would be located at defendant's residence. The trial court took judicial notice of the rules and regulations of the State which require all licensed child care centers to keep records concerning the care and control of children. We find no error with the trial court taking judicial notice of rules and regulations promulgated by a State. OCGA § 50-13-8. Since defendant's wife had the child care center license, there was probable cause for the magistrate to believe that the records would be found at the residence.

Defendant also contends that the information in the affidavit was stale because there was no allegation as to when the molestation took place. " 'Time is assuredly an element of the concept of probable cause. [Cit.] However, the precise date of an occurrence is not essential. Rather, the inquiry is as to whether the factual statements within the affidavit are sufficient to create a reasonable belief that the conditions described in the affidavit might yet prevail at the time of issuance of the search warrant. (Cit.)' [Cit.]" *Bayles v. State*, 188 Ga. App. 437, 438 (373 SE2d 266) (1988). The affidavit indicates that several acts of molestation occurred with different victims. "Because of that ongoing scheme, 'the passage of time becomes less significant than would be the case with a single, isolated transaction.' [Cits.]" Id. Moreover, the affidavit reflects that defendant's wife was presently engaged in the operation of a child care center. We conclude that the magistrate had a reasonable belief that the documents sought in the search warrant would be at the location described in the warrant.

Defendant next contends that the information in the affidavit did not show how the items sought were used in connection with the commission of a crime. We disagree. The trial court noted that while the affidavit could have included a statement from an expert that indicated other children at the center may be at risk, such a statement was not required. We agree with the trial court that the magistrate could have concluded based on the information in the affidavit that the records would be the most expedient way to identify other possible victims of the crime. There is no merit to defendant's argument.

Defendant also alleges that the search warrant failed to describe

with particularity the items sought. "The warrant description was sufficient to enable the searching officer to seize the described items with 'reasonable certainty.'" *Tyler v. State*, 176 Ga. App. 96, 97-98 (1) (335 SE2d 691) (1985).

Finally, defendant argues that the officers executing the search warrant exceeded the scope of the authorized search. The affiant testified at the suppression hearing that during the search he accompanied defendant's wife while she showed him the records and that the videotapes and sexually explicit books were in plain view and were seized at that time. The evidence shows that the officers were in defendant's house pursuant to a lawfully issued search warrant and that, while conducting a lawful search, seized certain items not listed in the warrant which were in plain view. " '[I]f an article is already in plain view, neither its observation nor its seizure (involves) any invasion of privacy. . . .'" *Bozeman v. State*, 196 Ga. App. 743, 744 (1) (397 SE2d 30) (1990). We find no error in the denial of defendant's motion to suppress as it relates to the sexually explicit books.

(b) Warrant No. 881. The affidavit given in support of this warrant was not available at the suppression hearing. The officer testified that to the best of his knowledge the application for that warrant was based on items seen at the defendant's house during the execution of warrant No. 878. The trial judge allowed the officer to testify as to the execution of warrant No. 881 but noted that he did not see how he could issue a ruling without seeing the affidavit. Defendant's counsel informed the judge that the thrust of his argument as to warrant No. 881 was that no prior determination of what would be considered "pornographic" was made. The trial court indicated that if that were the only basis for the motion, there was controlling authority against defendant. The trial court did not enter an order ruling on defendant's motion as it related to the second search warrant. When the items seized pursuant to warrant No. 881 were introduced at trial, defense counsel objected, incorporating into his objection all objections made during the suppression hearing. The only objection made by defendant during the hearing was that the magistrate should have made a prior determination that the items sought were pornographic. As stated in *Tyler v. State*, supra at 98, "the question of whether [the items seized] were in fact 'pornographic,' vel non, is not in issue." Id. This court noted in *Tyler* that the word pornographic as used in the warrant was merely descriptive of the acts defined in the affidavit, rather than as a constitutional classification. Furthermore, the items seized could be used to show the bent of mind of defendant to commit sexual crimes. *Tyler v. State*, supra at 99. Accordingly, we find no error with the denial of the motion to suppress on the only ground raised by defendant during the suppression hearing.

Due to the unavailability of the affidavit given in support of war-

rant No. 881, the question of probable cause to issue the warrant was not addressed by the trial court. Defendant neither brought this to the court's attention nor sought a further ruling on the issue of probable cause. He stated to the court that his motion to suppress the items seized pursuant to warrant No. 881 had been denied, and when he objected at trial, he incorporated his objections made during the suppression hearing. We discussed above the only objection made by defendant with regard to warrant No. 881. Defendant's attempt to raise on appeal arguments which were not raised during the motion to suppress or at trial will not be considered. See *Ely v. State*, 192 Ga. App. 203 (5) (384 SE2d 268) (1989).

3. Defendant contends that the trial court erred in admitting over 200 of the State's exhibits which consisted of adult magazines and books, sex games, and various sexual paraphernalia. Prior to trial, defendant made a motion in limine to exclude the items on the ground that the items did not relate to any sexual activity involving children, and were therefore not connected to the crime charged. Defendant informed the court that he would voice his objection to those materials at the proper time. When the State introduced the exhibits, defendant objected, incorporating the grounds raised in his motion in limine and the trial court admitted the exhibits over defendant's objections. " '[T]he admission or exclusion of evidence which is objected to on the ground of relevancy lies within the sound discretion of the trial court, whose decision will not be disturbed on appeal absent a clear abuse of discretion.' [Cit.]" *Barnwell v. State*, 197 Ga. App. 116, 118 (5) (397 SE2d 717) (1990). All of the exhibits related to sexual activity and were relevant to show a bent of mind toward sexual activity. See *Tyler v. State*, supra at 99. There was also evidence from some of the victims that they had seen certain of the adult magazines at defendant's home and had seen defendant playing with some of the sex games. We find no error with the admission of the State's exhibits.

4. Defendant argues that the trial court erred in admitting, pursuant to OCGA § 24-3-16, out-of-court statements made by Jessica to the DFCS caseworker during the initial interview and to the counselor during the videotaped interview. OCGA § 24-3-16 provides: "A statement made by a child under the age of 14 years describing any act of sexual contact or physical abuse performed with or on the child by another is admissible in evidence by the testimony of the person or persons to whom made if the child is available to testify in the proceedings and the court finds that the circumstances of the statement provide sufficient indicia of reliability." The trial judge conducted a hearing outside the presence of the jury and determined that the statements had sufficient indicia of reliability to be admissible. Our review of the transcript reveals that the judge considered the atmo-

sphere under which Jessica's statements were made as well as the child's demeanor. The judge specifically commented on what appeared to be a lack of spontaneity with which the victim responded to questions asked during the videotaped interview and found that there was nothing which indicated that the interviews were unduly suggestive. This enumeration of error is without merit. *Newberry v. State,* 184 Ga. App. 356, 357 (2) (361 SE2d 499) (1987).

5. The testimony of Jessica's mother was also admitted into evidence pursuant to OCGA § 24-3-16, over defendant's objection. Defendant contends that the trial court erred in admitting the statement without first conducting a hearing to determine whether there were sufficient indicia of reliability. " 'OCGA § 24-3-16 does not require a hearing to determine "indicia of reliability" be held prior to receiving the testimony . . . (and) we cannot say that failure to do so in this case was error. . . .' " *Windom v. State,* 187 Ga. App. 18, 19 (2) (369 SE2d 311) (1988). We find no error in the admission of the mother's testimony.

*Judgment affirmed. Birdsong, P. J., and Pope, J., concur.*

Decided January 24, 1992.

*David L. Cannon,* for appellant.
*Garry T. Moss, District Attorney,* for appellee.